UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| v. | § | CR. NO. C-06-563 |
| | § | |
| **CITGO PETROLEUM CORPORATION** | § | |
| **CITGO REFINING AND CHEMICALS** | § | |
| **COMPANY, L.P. and** | § | |
| **PHILIP D. VRAZEL** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court are the United States of America's (the "Government") Motion *in Limine* to Use as Evidence Attorney-Client Information and Documents Disclosed by Citgo During the Grand Jury Investigation (Dkt. #120) and Citgo Petroleum Corporation and Citgo Refining and Chemicals Company, L.P.'s ("Citgo") Motion to Compel the Return of Privileged Documents (Dkt. #136). At a hearing held before the Court on March 7-8, 2007, the parties addressed these issues and extensive briefing has been submitted by both sides. After considering the parties' arguments and the applicable law, the Court is of the opinion that the Government's Motion in Limine should be GRANTED IN PART and Citgo's Motion to Compel should be DENIED.

**Factual Background**

Citgo became the subject of a criminal environmental investigation by the Department of Justice and the federal grand jury in early 2003. The investigation centered around Citgo's alleged mismanagement of its benzene waste operations at its Corpus Christi refinery in violation of the Clean Air Act. *See* 42 U.S.C. § 7401, *et seq.* In response to several grand jury subpoenas *duces tecum* issued to Citgo, it produced thousands of documents, including privileged documents.

Citgo first learned of the inadvertently disclosed documents on December 15, 2005 when the Government subpoenaed Citgo's Senior Counsel claiming Citgo had waived its privilege. The

Government provided Citgo's counsel at the time, Terence Lynam, with the documents upon which it based its waiver argument. In response, Lynam wrote a detailed letter on December 28, 2005 explaining that the documents either were not privileged or were inadvertently disclosed and requested their return.[1] The Government refused. Citgo filed its motion to compel the return of the documents on March 1, 2007.

In its motion in limine, the Government cited six documents upon which it rests its claim for waiver of privilege. These documents include: (1) a report prepared by David Monfore which was solicited by Citgo's Senior Counsel, Dana Burch; (2) an email and slides prepared by Dana Burch for the purpose of briefing Citgo senior management on the status of benzene compliance at the refinery; (3) the handwritten notes of a meeting between outside counsel, Susan Harris, and Citgo's environmental personnel; (4) a list of questions prepared by Susan Harris to determine Citgo's compliance with Subpart FF at all of its refineries; (5) briefing documents prepared by ERM, an outside consultant, concerning compliance with Subpart FF at the Corpus Christi refinery; and (6) a draft TAB (i.e. total annual benzene) report for the operating year 2001 showing TAB calculations lower than those totals submitted to the Texas Commission on Environmental Quality. All the documents cited above were marked privileged and confidential. The Government contends these documents contained the advice of Citgo's counsel relating to compliance with the federal regulations governing management of benzene, and therefore Citgo has waived its privilege by disclosing these documents.

In response to the Government's motion in limine, Citgo explained from the beginning of the investigation in early 2003 it produced thousands of documents in response to grand jury

---

[1] *See* Dkt. # 158, ex. B.

2

subpoenas.[2] Several of the documents relating to internal audits may have been labeled "privileged," however, Citgo thoroughly reviewed them and either redacted the privileged information and provided a corresponding privilege log or determined they in fact were not privileged. Citgo denies that all the documents upon which the Government bases its waiver argument are privileged. Citgo maintains that only four documents were inadvertently disclosed or had not been redacted. Citgo argues that its communications with the Government and the privilege log demonstrate that it never waived any privileges.

### Discussion

The attorney-client privilege prevents disclosure of confidential communications between an attorney and client made while seeking or rendering legal services. *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *United States v. El Paso Co.*, 682 F.2d 530, 538 (5th Cir. 1982). Its purpose is to encourage full and frank communication between attorneys and their clients, thereby promoting broader public interests in the observance of law and administration of justice. *Upjohn*, 449 U.S. at 389. The privilege applies equally when the client is a corporation. *Id.* at 390. The party asserting the attorney-client privilege must prove that the confidentiality of the communications have been preserved; otherwise, the client "forfeits" his claim to the privilege. *El Paso*, 682 F.2d at 539. Disclosure of attorney-client communications to a third party who lacks a common legal interest generally waives the attorney-client privilege. *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992).

In determining whether an inadvertent disclosure waives the attorney-client privilege, courts must consider the circumstances surrounding the disclosure on a case-by-case basis. *Alldread v.*

---

[2] *See* Dkt. # 138, p. 2–3.

*City of Grenada*, 988 F.2d 1425, 1434 (5th Cir. 1993).  The court should consider several factors, none of which are dispositive: (1) the reasonableness of precautions taken to prevent disclosure; (2) the amount of time taken to remedy the error; (3) the scope of the discovery; (4) the extent of the disclosure; and (5) the overriding issue of fairness.  *Id.* at 1433.

The work product protection can also be waived. The work-product doctrine protects documents prepared in anticipation of litigation, including a "lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Hickman v. Taylor,* 329 U.S. 495 (1947); *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991).  For a document to be prepared in "anticipation of litigation," litigation does not necessarily have to be imminent, but "the primary motivating purpose behind the creation of the document [must be] to aid in possible future litigation."  *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000).  Excluded from work product protection are "materials assembled in the ordinary course of business or pursuant to public requirements unrelated to litigation."  FED. R. CIV. P. 26(b)(3).[3]

"[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party."  *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000). Waiver of work product protection only results if the work product is disclosed to an adversary. *S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006).  To waive work product protection, the disclosure must be inconsistent with maintaining the secrecy of an attorney's trial preparation.  *Edwards v. Whitaker*, 868 F. Supp. 226, 229–30 (M.D. Tenn. 1994).

---

[3] Although the work product doctrine is found in the Federal Rules of Civil Procedure, it may be consulted for guidance as to the scope of the work product protection in the criminal context.  *In re Grand Jury Subpoena*, 220 F.3d 406, 408 (5th Cir. 2000).

4

The issue presented to this Court is whether Citgo's inadvertent disclosure of privileged documents warrants a full subject matter waiver of its privilege as it relates to Citgo's compliance with benzene regulations. The Government claims Citgo waived its work product and attorney-client privileges relating to "all information on the issue of benzene waste management"[4] by producing several documents containing privileged information. Citgo argues a full subject matter waiver is inappropriate because only four documents out of thousands were inadvertently produced pursuant to the grand jury subpoenas. Citgo requests the return of the four privileged documents and argues that the Government has mischaracterized several of the documents it claims are privileged and therefore cannot base its waiver argument on those documents. Specifically, Citgo asserts that many of the documents cited by the Government were not privileged because they were related to the audits and compliance activities Citgo created in the ordinary course of business. Citgo also posits further reasons why the Government's waiver argument should fail, namely that it waited almost two years after the disclosure of the privileged documents before asserting waiver, and it violated its ethical obligations by failing to notify Citgo promptly once it discovered the privileged nature of the documents.

The positions of the parties on the status of the privileged nature of these documents presents almost a reversal of roles from the usual privilege disputes. The burden of demonstrating whether a document is privileged is placed on the holder of the privilege. *Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 721 (5th Cir. 1985). However, in this case, the Government is asserting the privilege for several documents where Citgo disclaims privilege. Of course, the Government takes this position in order to bolster its waiver argument. Because of this unique

---

[4] *See* Dkt. # 120, p. 3.

5

situation, the Court will not discuss the privileged nature of all the documents cited by the Government, but will only address the four inadvertently produced documents. Both parties have effectively agreed that at least portions of the inadvertently disclosed documents are privileged. The following four documents are the inadvertently disclosed privileged documents:

(1) Handwritten notes. Notes of meeting between outside counsel, Susan Harris, and Citgo's environmental office on October 1, 1999 (Bates Nos. CEP209769(9)–209774(9)). Citgo maintains that these notes were inadvertently disclosed and are privileged because they refer to communications with Susan Harris, which should have been redacted.

(2) Attorney Questions. Typewritten questions prepared by Susan Harris for a meeting with senior management titled "Citgo Benzene Waste NESHAPS Issues" (Bates Nos. CEP209775(9)–209777(9)). The document also includes some handwritten notations. Citgo denies that the handwritten notes are privileged.

(3) Sidley Memo. An environmental management systems review conducted by Sidley & Austin (Bates Nos. Cit.Cor000905–00911). The document was on Sidley & Austin letterhead and was solicited by Citgo in order to respond to the Texas Natural Resources Conservation Commission's Notice of Enforcement.

(4) A near verbatim copy of the Sidley Memo contained in an undated draft of its 2001 HS&E Excellence Review report (Bates Nos. Cit.Cor01349–01356).

**A.   Waiver of Privilege**

The Court must consider the *Alldread* factors to determine first if Citgo's inadvertent disclosures constitute a waiver of privilege. Evidence of multiple disclosures on multiple occasions leads the Court to believe that Citgo did not take reasonable precautions to prevent disclosure. This

factor weighs against Citgo. While Citgo maintains that it thoroughly reviewed the documents before producing them, several facts surrounding the disclosures demonstrate that Citgo did not take reasonable precautions to preserve the confidentiality of the documents. First, Terence Lynam, Citgo's counsel during the grand jury investigation explained in his affidavit that it was Citgo's practice to label documents related to internal environmental audits "privileged"–whether they were privileged or not– because the legal department provided assistance with the audits.[5] This practice of "mislabeling"[6] documents likely led to the inadvertent disclosure in this case. Although Citgo disclaims the importance of the privilege labels, marking a document "privileged" indicates that the document is worthy of close scrutiny. The failure of Citgo to carefully review these documents labeled "privilege" supports the finding that Citgo did not act reasonably to prevent disclosure. Further, each document produced in response to the grand jury subpoenas was Bates stamped. Presumably, these documents were subjected to some form of review, but obviously the steps taken were not adequate to prevent the privileged documents from being disclosed. Citgo, under the direction of current counsel, also reproduced the same documents on a disk to the Government during discovery. Before copying the disk for the Government, Citgo had another opportunity to withhold the documents they claimed were privileged. Moreover, allowing not one, but two versions of the Sidley Memo to be disclosed evidences the carelessness on Citgo's part in properly preserving its privilege. The multiple disclosures, by different law firms, at different times, before and after the Government's claim of waiver demonstrates the lack of reasonable efforts expended by Citgo to protect the confidentiality of these documents.

---

[5] *See* Dkt. # 136, ex. A.

[6] *See* Dkt. # 138, p. 1.

The amount of time taken to remedy the error also does not weigh in favor of Citgo. The first inadvertent disclosure occurred around July, 2003 during the grand jury investigation. Had the Government not presented its waiver argument in December, 2005, Citgo would have never known it inadvertently disclosed the documents. Citgo did promptly request the return of the documents at that point in December, 2005. However, despite the Government's repeated refusals to return the documents, it still took Citgo over a year to seek relief from the Court. Citgo's failure to take steps to effectuate the return of the documents until March, 2007 dooms its late attempt to assert the privilege.

Next, there is no question that the scope of the discovery was voluminous. There have been thousands, and perhaps hundreds of thousands, documents produced in this case. Citgo's "lost in the shuffle" argument would have greater weight had it not twice disclosed the privilege documents in different forms at different times. *See Crossroads Sys. (Texas), Inc. v. Dot Hill Sys. Corp.,* 2006 WL 1544621*, \*3 (W.D. Tex. 2006). And while thousands of documents were produced, the number of documents produced that were labeled "privileged" was far less. A Government investigator estimated that of 27 file drawers of documents retained by the Government in this case from Citgo, only one and a half file drawers contained documents labeled "privileged."[7] The Court does not discount that the overall scope of discovery was voluminous in this case, but when considering only those documents labeled "privileged," the extent of the disclosure is far more significant than Citgo would like to lead this Court to believe.

Finally, the overriding issue of fairness does not save Citgo from waiver. Citgo argues a waiver should not be found in this case because the Government violated its ethical duties when it

---

[7] *See* Dkt. # 164, ex A.

did not timely notify Citgo that it had potentially privileged documents. Citgo also claims the Government's waiver argument is untimely because it waited for almost two years after the documents were disclosed to seek a waiver. While the Court does not believe the Government handled its obligations with the utmost timeliness and candor, the Court cannot ignore the fact that Citgo failed to preserve its privilege. It was Citgo's burden to maintain the confidentiality of the privilege documents, and in that respect it failed. The Goverment's behavior will not exonerate Citgo's failures. Further, the essential function of the privilege, which is to protect a client's confidence, has been lost, leaving the privilege with no legitimate function to perform. After considering the *Alldread* factors, the Court finds that Citgo has waived its privilege by inadvertently disclosing privileged material to the Government. The Court will not relieve Citgo of the consequences of their carelessness because "the circumstances surrounding the disclosure do not clearly demonstrate that continued protection is warranted." *Alldread*, 988 F.2d at 1434.

**B.     Scope of Waiver**

Generally, the "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999); *United States v. El Paso*, 682 F.2d 530, 540 (5th Cir. 1982). This general principle has applied to circumstances in which the holder of the privilege voluntarily discusses privileged communications with a third party or selectively discloses privileged information for its tactical benefit. For example, in *Nguyen*, the executives (i.e. the holder of the privilege) voluntarily testified about attorney-client communications and the legal research undertaken by their attorneys in order to advance its defense that it had a good faith belief in the legality of its practices in a Fair Labor Standards Act suit. *Nguyen*, 197 F.3d at 207–08. The Fifth Circuit held the defendant employer,

9

through its executives, had waived its attorney-client privilege by selectively disclosing portions of privileged communications. *Id.* Similarly, in *El Paso*, the Fifth Circuit found that the taxpayer corporation had waived its attorney client privilege relating to a tax pool analysis by disclosing that information to accountants, despite the fact that the attorneys and accountants worked in conjunction on the tax returns. *El Paso*, 682 F.2d at 541. In both cases, the Court found that the disclosing party had waived its privilege as to the whole subject matter of the communication. Thus, a broad subject matter waiver is often justified on the grounds that such waiver is warranted if the holder of the privilege relies on the advice of counsel as part of its defense or claim, or selectively discloses portions of privileged communications in their own self-interest, or by some other means intentionally waives privilege. *See e.g., In re EchoStar Comm. Corp.*, 448 F.3d 1294 (Fed. Cir. 2006); *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995); *Industrial Clearinghouse, Inc. v. Browning Mfg. Div. of Emerson Elec. Co.*, 953 F.2d 1004 (5th Cir. 1992).

The primary distinction between this case and the cases permitting broad subject matter waiver is the inadvertent nature of Citgo's disclosure. Overall the treatment of the inadvertent and scope of waiver issues should be analyzed in terms of fairness and the "principal concern is selective use of privileged material to garble the truth, which mandates giving the opponent access to related privileged material to set the record straight." *See* 1 K. BROUN, MCCORMICK ON EVIDENCE § 93, Ch. 10 (6th ed. 2006); *see also In re Sealed Case*, 676 F.2d 793, 809 n. 54 (D.C. Cir.1982) ("Courts apparently retain discretion not to impose full waiver as to all communications on the same subject matter where the client has merely disclosed a communication to a third party, as opposed to making some use of it."); *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. 1981) (holding that the privilege was waived by disclosure to opposing counsel only as to the matter

10

actually disclosed and not as to the entire subject matter of the representation when "disclosure occurred early in proceedings and was made to opposing counsel rather than to the court"). Citgo was not attempting to make strategic use of this information and has gained no tactical advantage by disclosing this privileged information. In those contexts where privileged information is selectively disclosed for strategic reasons or as part of a claim or defense, it absolutely would prejudice the opposing party to not have full access to all the privileged communications on the same subject. However, the Government in this case will suffer no prejudice by only having access to the specific documents disclosed. The Court believes this ruling strikes the appropriate balance between condemning Citgo's carelessness with respect to preserving the confidentiality of these specific documents and upholding the important and valued policies underlying the attorney-client privilege. Therefore, the Court finds the inadvertent disclosure of the four privileged documents does not waive the privilege with respect to the entire subject matter of the representation, i.e. all issues related to benzene waste management.

## Conclusion

For the reasons set forth above, the Government's Motion in Limine (Dkt. #120) is granted in part and Citgo's Motion to Compel (Dkt. #136) is denied.

It is so ORDERED.

SIGNED this 16th day of April, 2007.

JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE