**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **CITGO PETROLEUM CORPORATION** | § | **CRIMINAL ACTION NO. C-06-563** |
| **CITGO REFINING AND CHEMICALS** | § | |
| **COMPANY, L.P.** | § | |
| **PHILIP D. VRAZEL** | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is CITGO's Motion to Set Aside Verdict, For a New Trial and For Entry of a Judgment of Acquittal on Counts Four and Five (Dkt. No. 472). Having considered the motion, response, reply, record, and relevant law, the Court is of the opinion that CITGO's motion should be **DENIED**.

**I. Background**

On August 9, 2006, the Government filed its original ten count indictment against CITGO Petroleum Corporation and CITGO Refining and Chemicals Company, L.P. (collectively "CITGO"), and Philip D. Vrazel. On May 9, 2007, the Government filed its superseding indictment. CITGO was tried on Counts One, Two, Four, and Five of the superseding indictment by a jury in Corpus Christi, Texas. Counts One and Two charged violations of 42 U.S.C. § 7413(c)(1), 42 U.S.C. § 7412(d), 18 U.S.C. § 2, and 40 C.F.R. § 61.342(e)(2)(i). Counts Four and Five charged violations of 42 U.S.C. § 7413(c)(1), 42 U.S.C. § 7411(e), and 40 C.F.R. § 60.692-4. The jury ultimately returned a verdict of not guilty on Counts One and Two and guilty on Counts Four and Five.

CITGO presently argues that "several manifest errors of law resulted in CITGO's conviction" for knowingly operating two oil-water separators, namely Tanks 116 and 117, without required emission control equipment. (Dkt. No. 472 at 1.)   Specifically, CITGO maintains that: (1) the jury charge was clearly erroneous; (2) a conviction would violate CITGO's constitutional rights; (3) the evidence used to convict CITGO was erroneously admitted; and (4) the totality of the evidence was insufficient to sustain a conviction.  The Court will address CITGO's arguments in turn.

**II. Legal Standard**

"'A motion for judgment of acquittal challenges the sufficiency of the evidence to convict.'"  *United States v. Lucio*, 428 F.3d 519, 522 (5th Cir. 2005) (quoting *United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998)).  A jury's verdict should be upheld if any rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt.  *United States v. Charles,* 469 F.3d 402, 406 (5th Cir. 2006) (citing *Jackson v. Virginia*, 443 U.S. 307, 318—19 (1979)).  In conducting this inquiry, the Court examines the evidence as a whole and construes it in the light most favorable to the jury's verdict, drawing all reasonable inferences to support the verdict.  *United States v. Ragsdale*, 426 F.3d 765, 770—71 (5th Cir. 2005) (citing *United States v. Floyd*, 343 F.3d 363, 370 (5th Cir. 2003)).

"The standard does not require that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt." *United States v. Loe*, 262 F.3d 427, 432 (5th Cir. 2001) (citing *United States v. Baytank (Houston), Inc.*, 934 F.2d 599, 616 (5th Cir. 1991)).  "If the evidence, however, gives equal or

2

nearly equal circumstantial support to a theory of guilt and a theory of innocence, [the Court] must reverse the conviction, as under these circumstances 'a reasonable jury *must necessarily entertain* a reasonable doubt.'" *United States v. Lopez*, 74 F.3d 575, 577 (5th Cir. 1996) (quoting *United States v. Sanchez*, 961 F.2d 1169, 1173 (5th Cir. 1992) (emphasis in original)).

"[A court's Rule 29] review of the sufficiency of the evidence does not include a review of the weight of the evidence or of the credibility of the witnesses." *Ragsdale*, 426 F.3d at 771 (quoting *Floyd*, 343 F.3d at 370) (internal quotation marks omitted).  "A jury is free to choose among reasonable constructions of the evidence.  And it retains the sole authority to weigh any conflicting evidence and to evaluate the credibility of the witnesses." *Loe*, 262 F.3d at 432 (internal citations and quotations omitted).

A district court may grant a new trial "if the interest of justice so requires."  FED. R. CRIM. P. 33(a).  "A motion for a new trial is addressed to the discretion of the court, which should be exercised with caution, and the power to grant a new trial . . . should be invoked only in exceptional cases . . . ." *United States v. Sipe*, 388 F.3d 471, 493 (5th Cir. 2004) (citation and internal quotation marks omitted).  The power to grant a new trial "should be exercised infrequently by district courts, unless warranted by 'exceptional' circumstances." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005).  The trial judge may grant a new trial only if he finds that the evidence preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand. *See id.*; *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004).  If the Court "finds that a miscarriage of justice may have occurred at trial, . . . this is classified as such an 'exceptional case' as to warrant granting a new trial in the interests of justice." *Sipe*, 388 F.3d at 493 (citations and internal quotation marks omitted).  The trial judge

may weigh the evidence and assess credibility of witnesses in reviewing a motion for a new trial.

*United States v. Arnold*, 416 F.3d 349, 360 (5th Cir. 2005).

## III. Analysis

### A. The Jury Charge Was Clearly Erroneous.

CITGO presently argues that the Court's jury charge was erroneous because: (1) under the plain language of 40 C.F.R. § 60.691, the "EPA specifically defined the term 'oil-water separator' to include only units with specific types of equipment, namely 'the forebay and other separator basins, skimmers, weirs, grit chambers, and sludge hoppers,' which are not found in equalization tanks." (Dkt. No. 472 at 4—5); and (2) the EPA specifically exempted equalization tanks from the definition of "oil-water separator" after public notice and comment. CITGO further asserts that this reading must be adopted because otherwise certain terms composing the definition of "oil-water separator," to wit "which also includes," would be superfluous.

The definition of "oil-water separator" in 40 C.F.R. § 60.691 provides:

"Oil-water separator" means wastewater treatment equipment used to separate oil from water consisting of a separation tank, which also includes the forebay and other separator basins, skimmers, weirs, grit chambers, and sludge hoppers. Slop oil facilities, including tanks, are included in this term along with storage vessels and auxiliary equipment located between individual drain systems and the oil-water separator. This term does not include storage vessels or auxiliary equipment which do not come in contact with or store oily wastewater.

40 C.F.R. § 60.691. The Court instructed the jury as follows:

An *oil-water separator* means wastewater treatment equipment used to separate oil from water consisting of a separation tank, which also includes the forebay and other separator basins, skimmers, weirs, grit chambers, and sludge hoppers. Slop oil facilities, including tanks, are included in this term along with storage vessels and auxiliary equipment located between the individual drain systems and the *oil-water separator*. This term does not include storage vessels or auxiliary equipment that does not come in contact with or store oily wastewater.

The definition of oil-water separator does not require that a separation tank have any or all of the ancillary equipment mentioned such as forebays,

4

> skimmers, weirs, grit chambers, and sludge hoppers for the separation tank to meet the regulatory definition of an oil-water separator. An oil-water separator is defined by how it is used.

(Dkt. No. 418 at 12.)

When presented with a question of statutory interpretation, a court must begin with the plain language used by the drafters. *United States v. Uvalle-Patricio*, 478 F.3d 699, 703 (5th Cir. 2007) (quoting *United States v. Williams*, 400 F.3d 277, 281 n.2 (5th Cir. 2005) (internal citation omitted)). "[E]ach part or section of a statute should be construed in connection with every other part or section to produce a harmonious whole." *Id.* (quoting *Williams*, 400 F.3d at 281 n.2 (internal citation omitted)); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) ("In ascertaining the plain meaning of [a] statute, [a] court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole."). Furthermore, a statute should be construed in a manner that does not render any single provision superfluous. *E.g.*, *Wadsworth v. Johnson*, 235 F.3d 959, 963 (5th Cir. 2000) (citing *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 876 (1991)). Plain language, moreover, should not be construed to produce an absurd result. *United States v. A Female Juvenile*, 103 F.3d 14, 16—17 (5th Cir. 1996). These rules of statutory interpretation apply with equal force to the interpretation of promulgated agency regulations. *General Elec. Co. v. United States*, 221 Ct. Cl. 771, 734 (1979) (citing *Rucker v. Wabash R.R. Co.*, 418 F.2d 146 (7th Cir. 1969)).

After examining the plain language of 40 C.F.R. § 60.691, the Court is not persuaded by CITGO's argument. Nothing in the language of the definition of "oil-water separator" explicitly mandates that "the forebay and other separator basins, skimmers, weirs, grit chambers, and sludge hoppers" exist in conjunction with a separation tank in order for the units to be

collectively classified as an "oil-water separator."  Rather, the plain language of the definition only indicates that these ancillary items are to be included in the definition of "oil-water separator" if they exist.

This reading is consistent with the context of the definition.  Indeed, each of the ancillary items modified by the phrase "which also includes" are properly described as ancillary equipment.  After reading the first portion of the sentence, which includes separation tanks "used for separating oil and water" in the definition of the term "oil-water separator," the reader may wonder whether or not ancillary equipment is included in the term for the purpose of regulation. The second portion of the first sentence following the phrase "which also includes" settles this potential ambiguity.  Moreover, this reading imports meaning to the term "which also includes" by finding that it is inclusive, but not mandatory.  This use is distinct from the term "consisting of," which is found in the first half of the first sentence of the definition. The Court's interpretation of the phrase "which also includes" is also consistent with subsequent uses of the term "include" within the definition of "oil-water separator."  In the second and third sentence the term is used to further delimit which equipment falls under the umbrella of the term "oil-water separator" without mandating that such equipment exist for the term to be operative. Were the definition to mean what CITGO posits, the first sentence would likely read as follows: "'Oil-water separator'" means wastewater treatment equipment used to separate oil from water consisting of a separation tank, the forebay and other separator basins, skimmers, weirs, grit chambers, and sludge hoppers."

CITGO has failed to convince the Court that the jury charge was erroneous.

### B.  A Conviction Would Violate CITGO's Constitutional Rights.

CITGO next argues that the Court's departure from the unambiguous and clear definition of "oil-water separator" frustrated CITGO's right to fair, advance notice of what conduct is prohibited.  CITGO maintains that its conviction is constitutionally infirm because when the term "oil-water separator" is defined by how it is used, there is no standard for "how much oil is too much." According to CITGO, because there is no federal standard or limit regarding how much oil can be in or on an equalization tank, CITGO "had no way of knowing that operating [Tanks 116 and 117] without emissions controls was criminal under Subpart QQQ. Absent proper notice, the conviction violated CITGO's Due Process." (Dkt. No. 514 at 12.)

The evidence presented at trial showed that regardless of what CITGO chose to call Tanks 116 and 117, the tanks operated as de facto oil-water separators. While there is no federal standard regulating how much oil can be on or in an equalization tank, the Government's EPA witness, Ken Hustvedt, testified at the pretrial hearing that the bright line to be drawn between equalization tank and oil-water separator was "when you had to shut down the mixers, and when you had to bring in slop oil tanks . . . it appears to be an oil/water separator because it was getting a lot of sludge in the bottom through gravity separation and oil in the top." (Tr. 3/7/07, Dkt. No. 183 at 213:3—213:10.) Mr. Hustvedt further testified, "I don't think what we're talking about here is an equalization basin became an oil/water separator. I think it was an oil/water separator from day one. It was never operated as that, that's just the name on it." (*Id.* at 210:14—210:18.) The testimony of CITGO's own employees was consistent with that of Mr. Hustvedt. CITGO's terminal engineer, Burton Cooper, and environmental engineer, Kevin Kenall, both testified that CITGO was using tanks 116 and 117 as oil-water separators.

The evidence presented at trial also showed that CITGO was on notice that Tanks 116 and 117 were required to be equipped with emission controls. Several CITGO employees recommended the installation of floating roofs in order to comply with federal regulations before Tanks 116 and 117 were even constructed. Furthermore, in January 1999 and again in December 1999, the Texas Commission on Environmental Quality (TCEQ) cited CITGO for operating Tanks 116 and 117 without federally mandated emission equipment.

Finally, the Court finds no merit to CITGO's argument that "[b]ecause this Court clearly stated that Subpart QQQ is ambiguous, it is now required by [*United States v. Santos*, 553 U.S. 507 (2008)] to adopt the interpretation favoring CITGO." (Dkt. No. 651 at 4.) First, the rule of lenity does not apply here because Subpart QQQ is not ambiguous. Although the Court initially "admit[ted] to being confused in trying to understand these regs" (Tr. 5/16/07 at 166:1—2), the Court expressed no indication that the statute was ambiguous a month later when it stated unequivocally, "Concerning the oil/water separators, I think I indicated . . . clearly before trial that my position was they did not have to contain all of those various components parts, the weirs and so forth. They may, but did not have to contain them to be oil/water separators." (Tr. 6/19/07 at 249: 19—24.) The Court further ruled as follows:

> My ruling is that under the regs, the regs list certain component parts of an oil/water separator. My ruling is an oil-water separator does not have to have those parts to be an oil/water separator. It may have those parts, but . . . if a piece of equipment does not have those parts, that does not mean it is not an oil-water separator.

(Tr. 6/19/07 at 258:25—259:7.)

Even if the rule of lenity did apply, *Santos* is inapposite to the facts of this case. The Supreme Court's narrow holding in *Santos* was simply that the money-laundering statute in

8

question was ambiguous, thus invoking the rule of lenity, and that "proceeds" referred to "profits" and not "receipts" in that prosecution. *Santos*, 553 U.S. at 514. As such, to date the Fifth Circuit has cited *Santos* once with respect to the rule of lenity, *U.S. v. Nam Van Hoang*, — F.3d—, 2011 WL 635879, *5 (5th Cir. Feb. 23, 2011) (holding that Sex Offender Registration and Notification Act was clear and did not apply to defendant, but to the extent it may be ambiguous, "'[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.'") (quoting *Santos*). The remaining 16 cases in which the Fifth Circuit cited *Santos* involved money-laundering and the definition of "proceeds." *See Garland v. Roy*, 615 F.3d 391, 393 (5th Cir. 2010); *United States v. Phipps*, 595 F.3d 243, 245 n.1 (5th Cir. 2010); *United States v. Bueno*, 585 F.3d 847, 849 (5th Cir. 2009); *United States v. Fernandez*, 559 F.3d 303, 315 (5th Cir. 2009); *United States v. Brown*, 553 F.3d 768, 782 (5th Cir. 2008); *United States v. Achobe*, 560 F.3d 259, 269 (5th Cir. 2008); *United States v. Huynh*, 2011 WL 989825, *6—7 (5th Cir. March 22, 2011) (unpublished); *Steward v. Keffer*, 2011 WL 573509, *1 (5th Cir. Feb 17, 2011) (unpublished); *United States v. Williams*, 2010 WL 4747154, *1 (5th Cir. Nov. 23, 2010) (unpublished); *Kenemore v. Roy*, 2010 WL 4683742, *1 (5th Cir. Nov 18, 2010) (unpublished); *Ghali v. Roy*, 378 Fed. Appx. 462, 463 (5th Cir. May 18, 2010) (unpublished); *United States v. Osuagwu*, 354 Fed. Appx. 158, 161 (5th Cir. Nov. 18, 2009) (unpublished); *United States v. Arbuckle*, 2010 WL 3257309, *2 (5th Cir. Aug 17, 2010) (unpublished); *United States v. Gonzalez*, 2009 WL 2391507, *1 (5th Cir. Aug. 5, 2009) (unpublished); *United States v. Quintanilla-Gonzalez*, 2009 WL 1346242, *1 (5th Cir. May 13, 2009) (unpublished); *United States v. Redd*, 2009 WL 348831, *8 (5th Cir. Feb. 12, 2009) (unpublished).

Likewise, the Court finds no merit to CITGO's assertion that the Supreme Court's recent decision in *Skilling v. United States* "supports CITGO's position and requires that its conviction be set aside." (Dkt. No. 723 at 2.) In *Skilling*, a jury convicted the defendant under 18 U.S.C. §1346 for "honest-services fraud." *Skilling v. United States*, 130 S.Ct. 2896 (2010). The Supreme Court found that although the statute criminalizes bribery and kickbacks, the Government presented no evidence that the defendant "solicited or accepted side payments from a third party in exchange for making [certain] representations." *Id.* at 2934. Contrary to CITGO's assertion, the Supreme Court did not find that the statute [18 U.S.C. §1346] was ambiguous, but rather that the defendant's conduct did not fall within the meaning of the statute because there was no evidence that third party bribery or kickbacks were involved.

The Court, like the jury, finds that CITGO knowingly operated Tanks 116 and 117 as oil-water separators. CITGO therefore had fair, advance notice that Subpart QQQ applied to Tanks 116 and 117 and that the tanks were required to have emission control equipment. CITGO's conviction does not violate CITGO's due process rights.

### C. The Evidence Used to Convict CITGO was Erroneously Admitted.

#### 1. The 200 Gallon per Day Evidence Was Irrelevant, Confusing, and Highly Prejudicial.

CITGO maintains that a new trial is warranted because "numerous documents and testimony describing a 200 gallon per day standard" were admitted into evidence. (Dkt. No. 472 at 9.) CITGO emphasizes that Mr. Kevin Kenall testified that he "simply made up a number to give the refinery engineers a concrete target."   (*Id.*) CITGO also points out that the Court instructed the jury that "[u]nder federal law, there is no standard or limit regarding how much oil can be on or in an equalization tank."  (*Id.* (quoting 5/29/07 Tr., Dkt. No. 507 at 36:21—36:23).)

CITGO argues that the admission of the "200 gallon evidence" was irrelevant, confusing, and highly prejudicial.

The Court is not persuaded by CITGO's argument. The Court carefully considered which evidence to admit and which to exclude.  Many of the references to the 200 gallon evidence were redacted in the admitted exhibits.  Questioning was restricted in such a way as to explain the context in which events occurred.  Lastly, the Court carefully instructed the jury to disregard the 200 gallon evidence on several occasions.  The Court finds that its precautions and rulings minimized confusion and prejudice.

### 2. Numerous Government Witnesses Testified on the Ultimate Issue, Which Amounts to Plain Error and Was Highly Prejudicial.

CITGO further maintains that a new trial should be granted because testimony on the ultimate issue was heard by the jury.  Specifically, CITGO complains that Kevin Kenall testified that Tanks 116 and 117 "were [] being used to separate oil from water."  (Dkt. No. 472 at 10 (quoting 5/30/07 Tr. at 21:12—21:13).) CITGO maintains that Mr. Kenall's testimony was on the ultimate issue because the Court instructed the jury that "[a]n oil/water separator is defined by how it is used." (Dkt. No. 418 at 12.)

The Court does not believe that the testimony identified by CITGO constitutes a legal conclusion.

### D. The Totality of the Evidence is Insufficient To Sustain a Conviction Even Under the Improper Functional Standard to Which the Government Subscribes.

Finally, CITGO argues that a new trial is warranted because "the uncontroverted evidence is clear that Tanks 116 and 117 were designed and functioned as equalization tanks, which by design separate oil from water." (Dkt. No. 472 at 11.) Moreover, "[a]lthough both

Tanks 116 and 117 accumulated a volume of oil over time, . . . [t]he emulsified oil at the top of Tank 117 was occasionally vacuumed off the top of the tank . . . . Tank 116, in contrast, was almost never vacuumed." (*Id.* at 11—12.) Thus, CITGO contends, no reasonable jury could conclude that the tanks—especially Tank 116—functioned as oil-water separators.

As explained fully, *supra*, the evidence overwhelmingly supported the jury's finding that Tanks 116 and 117 functioned as oil-water separators, regardless of what CITGO claims the tanks were designed to do. Further, with respect to CITGO's claim that no reasonable jury could conclude that Tank 116 functioned as an oil-water separator because it was "almost never vacuumed" when compared to Tank 117, the Court notes that the TCEQ's surprise inspection in March of 2002 uncovered a 10-foot layer of oil in Tank 116—over 30 percent more oil than in the 7.5-foot layer found in Tank 117. It is apparent that CITGO needed to vacuum Tank 116, even if it did not do so frequently.

The Court finds that the evidence was sufficient to sustain a conviction.

### IV. Conclusion

For the foregoing reasons, CITGO's Motion to Set Aside Verdict, For a New Trial and For Entry of a Judgment of Acquittal on Counts Four and Five (Dkt. No. 472) is **DENIED**. CITGO's Request for Oral Argument on Its Motion for a New Trial (Dkt. No. 704) is also **DENIED**.

It is so **ORDERED**.

**SIGNED** this 28th day of March, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

12