UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. C-06-563 |
| | § | |
| CITGO PETROLEUM | § | |
| CORPORATION, | § | |
| CITGO REFINING AND CHEMICALS | § | |
| COMPANY, L.P., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is CITGO Petroleum Corporation and CITGO Refining and Chemicals Company, L.P.'s (collectively "CITGO") Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 575). Having considered the motion, responses, replies, record, and relevant law, the Court is of the opinion that the motion should be **GRANTED**.

**Background**

On June 27, 2007, a jury returned a verdict of guilty against CITGO on Counts Four and Five of the superseding indictment. Specifically, CITGO was found guilty of operating two tanks as oil-water separators without emission control equipment. The Court then ordered a presentence investigation report. CITGO and the Government filed objections to the report as well as memoranda in aid of sentencing. The Government identified approximately 100 alleged victims in its original submissions that it claimed qualified as crime victims under the Crime Victims' Rights Act (CVRA) and were therefore entitled to testify at sentencing.

1

On February 27, 2008, after conducting a status conference with both Parties, the Court determined that it would hear the testimony of a representative sample of alleged victims to determine whether or not they qualified as victims under the CVRA.  The Government subsequently filed a notice identifying 16 alleged victims that would testify.  On March 14, 2008, CITGO filed its present motion to exclude the alleged victims because they do not qualify as victims under the CVRA.

On April 29, 2008, the Court initiated a hearing to determine whether or not the alleged victims qualify as victims under the CVRA.  Over the course of the hearing, the Court heard testimony from the following alleged victims: Oak Park residents Rebecca Zamora, Diane Cantu, Rosalinda Armadillo, and Patricia Gomez; Hillcrest Residents Thelma Morgan, Betsy Tate, Jean Salone, Rosie Ann Porter, Maureen Brooks, Joel Mumphord, and Betty Whiteside; Crosley Elementary School (located in Hillcrest) employees Kathleen Fleming, Diana Linan, and Curtis Till on behalf of the student victims; Eden Lane resident Tammy Castillo; and TCEQ Inspector Dorothy Daywood.[1] The Court also heard testimony from CITGO employees Katie O'Connell and Mark Cheesman; and Texas Commission on Environmental Quality (TCEQ) agents James Timothy Doty, Vincent Leopold; Karen Bridges, David Turner, Guadalupe Lopez, Joseph Montoya, and Scott Poole. In addition, the following individuals offered expert testimony: Environmental Protection Agency (EPA) agents Dr. Christopher Weis, Erik Snyder, and Kent Hustvedt; Centers for Disease Control (CDC) toxicologist Dr. John Risher; physician Dr. J.D. Britton, retired public health administrator Dr. Glen Kost; toxicologist/epidemiologist Dr. Janet Kester; and chemical engineer James Montgomery.

---

1.  Oak Park and Hillcrest are Corpus Christi neighborhoods located near the CITGO refinery. Eden Lane is several miles away from the refinery.

The Parties then filed extensive briefing following the hearing. (Dkt. Nos. 688, 690, 692, 693, 697 & 699.)

## Legal Standard

In 2004, Congress passed the CVRA "to give crime victims enforceable rights to participate in federal criminal proceedings." *United States v. BP Products North America Inc.*, 2008 WL 501321, * 7 (S.D. Tex. Feb. 21, 2008).  The statute "was enacted to overcome the effects of a criminal justice system that had become 'out of balance—while criminal defendants have an array of rights under law, crime victims have few meaningful rights.'" *Id.* (quoting 150 Cong. Rec. S4260, S4262 (daily ed. Apr. 22, 2004)).  The Act "was intended to show that the criminal justice system 'can and should care about both the rights of the accused and the rights of victims.'" *Id.* The rights under the statute are described as "basic" and not "at the expense of defendant's rights."  *Id.*

The CVRA defines the term "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense."  18 U.S.C. § 3771(e).  Thus, in order for an individual to be a "crime victim," but-for causation as well as direct, proximate causation must be established. In making the necessary factual findings as to whether an individual meets the statutory definition of "crime victim," the Court should employ a two-step analysis: (1) the Court should determine what was the offense of conviction, based solely on the jury verdict; and (2) the Court should make factual findings to determine whether any person or persons were directly and proximately harmed as a result of the commission of the offense of conviction. *United States v. Atlantic States Cast Iron Pipe Co.*, 612 F.Supp.2d 453, 536 (D.N.J. Mar. 23, 2009).

**Discussion**

A jury found CITGO guilty of the offenses charged in Counts Four and Five of the Superseding Indictment. Count Four alleged as follows:

> From on or about January, 1994, and continuing to on or about May, 2003 . . . the defendants . . . did knowingly operate a new stationary source, an oil water separator, which may emit a hazardous pollutant, benzene, that is tank 116 at the Citgo East Plant Refinery, without an emission control device; to wit, a fixed or floating roof to prevent the emission of benzene into the environment.

(Dkt. No. 287 at 11—12.) Count Five was identical to Count Four, except that it charged CITGO with operating tank 117 without a roof. (*Id.*) Thus, in order for the alleged victims to qualify as "crime victims" under the CVRA, the Government must establish that these individuals were directly and proximately injured by emissions from tank 116 and/or tank 117 during the time period from January 1994 to May 2003.

CITGO presently argues that the Government has failed to prove direct and proximate harm because: (1) the facts established at the hearing are insufficient to support any theory of causation; (2) the Government did not produce legally required expert testimony establishing specific medical causation; and (3) the facts established at the hearing prove that tanks 116 and 117 were not the cause of adverse health effects. In response, the Government argues that: (1) lay testimony is sufficient to prove causation, and expert testimony is not required; (2) monitored levels of benzene are "meaningless" because they were averaged; (3) expert testimony as to causation was offered; and (4) tanks 116 and 117 were proven to be the direct and proximate cause of health effects.

To establish direct and proximate harm, the Government has primarily relied upon the testimony and victim impact statements of the alleged victims. The alleged victims have complained of similar health conditions, namely: (1) burning eyes; (2) bad taste in

4

the mouth; (3) nose burning; (4) sore throat; (5) skin rashes; (6) shortness of breath; (7) vomiting; (8) dizziness; (9) nausea; (10) fatigue; and (11) headaches. The alleged victims also generally complain of various odors in their neighborhoods. In addition to this evidence, the Government has also relied on: (1) the testimony of TCEQ agents linking certain odors and complaints to tanks 116 and 117; and (2) the testimony of its expert toxicologists, Dr. Risher and Dr. Weis.[2]

The Government argues that causation has been established because the health conditions complained of by the alleged victims are consistent with chemical exposure. It maintains that the health conditions reported by the alleged victims constitute evidence showing that harmful levels of chemicals entered the neighborhoods where the alleged victims lived. Furthermore, the Government maintains that these harmful levels of chemicals are linked to tanks 116 and 117 because nuisance level odors were traced back to tanks 116 and 117 on several occasions from the neighborhoods in question.

It is of key importance that the health conditions complained of are common symptoms. Such common symptoms have many potential causes—such as allergies, bacteria, viruses, or chemical exposure—some of which are difficult to prove. In this case, many of the alleged victims are elderly. Also, many of the alleged victims have various medical conditions, and a number admitted to smoking cigarettes. Under these circumstances, causes for the complained of symptoms other than chemical exposure amount to a possibility.

It is not surprising that in cases of chemical exposure, courts have required one theory of causation to be more likely than other theories of causation. *See Brown v.*

---

2. On March 31, 2011, the Court granted CITGO's Motion to Strike the Specific Causation Testimony of Dr. Weis. (Dkt. No. 728.) This testimony will therefore not be considered by the Court.

*Parker-Hannifin Corp.*, 919 F.2d 308, 312 (5th Cir. 1990); *cf. Castellow v. Chevron USA*, 97 F.Supp.2d 780, 797 (S.D. Tex. 2000).   Accordingly, courts have required something more than symptoms and a cause when proving causation in the context of chemical exposure.  This is especially true when "working backwards" from symptoms to a cause, like in this case.  *See Castellow*, 97 F. Supp. 2d at 797.  Extra evidence heightening the likelihood of one cause over another may include accurate information about the level of exposure or unusually compelling circumstances.  *Moore v. Ashland Chem.*, *Inc.*, 151 F.3d 269, 278 (5th Cir. 1998) (en banc).  The Parties have placed emphasis on the reasoning of Texas courts, which also recognize that when causation is beyond lay comprehension, expert testimony is necessary to determine the specific cause involved. *E.g.*, *Brookshire Bros., Inc. v. Smith*, 176 S.W.3d 30, 2004 WL 1064776, *3 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ("Expert testimony is particularly necessary in chemical-exposure cases, in which medically complex diseases and causal ambiguities compound the need for expert testimony.").

In the present case, the Government has not adequately proven that tanks 116 and 117 are the specific cause of the alleged victims' health conditions.  The Court finds that in light of the potential causal ambiguities, something more than symptoms alone are necessary to prove causation.  Although the government has traced a few odors back to tanks 116 and 117, the temporal connection between exposure and symptoms is generally not entitled to great weight.  *Moore*, 151 F.3d at 279.  Although tanks 116 and 117 may have caused unpleasant odors, there is no proof showing that the concentration of chemicals in these emissions rose to the level necessary to cause health effects.  Due to these circumstances, the proof of causation before this Court is inconclusive.

The records evidence, submitted by CITGO and the Government, supports the above finding.  Notably, the extensive monitoring data from the Corpus Christi area do not show readings of volatile organic compounds that exceeded state and federal regulatory levels.  Although the Government has pointed out that some of these data may not indicate spikes of concentrations because they are averaged and not collected every day, the evidence is still entitled to the weight it deserves.  The Government has not provided monitoring data showing spikes, and importantly, the only cause of a recorded spike on monitoring equipment is a higher concentration of chemicals.

The medical records submitted by the alleged victims also support the Court's holding.  Each alleged victim was invited to show their medical records to the Court.  Some chose to submit records, while others declined.  Nonetheless, the submitted medical records are voluminous.  They document a variety of illnesses unrelated to chemical exposure.  They do, however, reference chemical exposure on two occasions: once as a patient complaint and once as a cause that cannot be ruled out.  Still, none of the medical records documenting more than 950 office visits diagnose chemical exposure and none of the other medical records even mention chemical odors.

The Court wishes to make clear that this ruling is in no way intended to diminish or otherwise marginalize the putative victims' individual and collective plights.  It is beyond argument than many, if not all, of the purported victims suffered some level of adverse health conditions during the time in which they lived near the CITGO refinery.  In all likelihood, their negative experiences can be at least partially attributed to their proximity to the group of refineries, including CITGO's, bordering their community.  Notably lacking, however, is any evidence that their physical symptoms are directly and

proximately traceable to emissions from CITGO's tanks, specifically tanks 116 and 117. When viewed in whole, the evidence proffered in support of finding the complaining citizens to be "crime victims" as that term has been used by the CVRA consists merely of rumor, innuendo, and suggestion, with no underlying, sound evidence connecting the symptoms complained of with CITGO's violations. To borrow the phrasing of the CVRA, the complaining individuals here are simply not "person[s] directly and proximately harmed as a result of the commission of [CITGO's] Federal offense."  18 U.S.C. § 3771(e).

### Conclusion

For the foregoing reasons, CITGO's Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 575) is hereby **GRANTED**.

It is so **ORDERED**.

**SIGNED** this 5th day of April, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE