UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | **CRIMINAL ACTION NO. C-06-563** |
| § | |
| **CITGO PETROLEUM CORPORATION,** § | |
| **CITGO REFINING AND CHEMICALS** § | |
| **COMPANY, L.P.,** § | |
| § | |
| Defendants. § | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court are three motions to reconsider filed by the United States of America ("the Government") (Dkt. Nos. 730, 732, and 733), to which Defendants CITGO Petroleum Corporation and CITGO Refining and Chemicals Company (collectively "CITGO") have responded (Dkt. Nos. 734, 735, 736, respectively). Having considered the motions, responses, record, and relevant law, the Court is of the opinion that the Government's Motion for Reconsideration of the Court's Order Striking the Testimony of Dr. Weis (Dkt. No. 730) should be **GRANTED**, and the Government's Motion for Reconsideration of the Court's Order Allowing the Testimony of James Montgomery (Dkt. No. 732) and Motion for Reconsideration of the Court's Order Granting CITGO's Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 733) should be **DENIED**.

**I. Background**

Following CITGO's conviction on Counts Four and Five, the Court was faced with the question of whether, under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771, the Government could establish that there were any victims to CITGO's crimes. In order to make

1

this determination, the Court held extensive evidentiary hearings and heard from numerous witnesses, including the Government's proffered expert witness, Dr. Christopher P. Weis, and CITGO's proffered expert witness, James Montgomery. The Parties filed extensive briefing following the hearing (Dkt. Nos. 688, 690, 692, 693, 697, 699), including the Government's Motion to Strike the Testimony of James Montgomery from the Sentencing Hearing (Dkt. No. 643), CITGO's Motion to Strike the Specific Causation Testimony of Dr Weis (Dkt. No. 671), and CITGO's Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 575).

After careful consideration, the Court denied the Government's Motion to Strike the Testimony of James Montgomery from the Sentencing Hearing and granted CITGO's Motion to Strike the Specific Causation Testimony of Dr Weis and Motion to Exclude the Government's Purported "Victim" Witnesses. (*See* Dkt. Nos. 727, 728, and 729, respectively.) The Government now moves the Court to reconsider its decision with respect to all three Orders.

**II. Legal Standard**

Although the Federal Rules of Criminal Procedure do not explicitly authorize motions for reconsideration, district courts possess continuing jurisdiction over criminal cases and are free to reconsider their earlier decisions. *United States v. Scott*, 524 F.2d 465, 467 (5th Cir. 1975). Absent specific guidance from the Federal Rules of Criminal Procedure, courts should apply the standards set forth in the Federal Rules of Civil Procedure to motions for reconsideration. *U.S. v. Rollins*, 607 F.3d 500, 502 (7th Cir. 2010) (citing *U.S. v. Healy*, 376 U.S. 75 (1964)) ("[T]he Supreme Court . . . Justices have concluded that motions to

reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits.").

Because the orders at issue are interlocutory orders, the Court should apply FED. R. CIV. P. 59(e)'s standards to the Government's motions for reconsideration. *See J.D. Fields & Co., Inc. v. U.S. Steel Int'l., Inc.*, 690 F. Supp. 2d 487, 510—11 (S.D. Tex. 2009). A Rule 59(e) motion "calls into question the correctness of a judgment," *Templet v. Hydrochem Inc.*, 367 F.3d 473, 478—79 (5th Cir. 2004), and thus "must clearly establish either a manifest error of law or fact or must present newly discovered evidence." *Schiller v. Physicians Res. Group, Inc.*, 342 F.3d 563, 567 (5th Cir. 2003). "Like a motion under Rule 59(e), a motion to reconsider may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised before the entry of the judgment or order." *T-M Vacuum Products, Inc. v. TAISC, Inc.*, 2008 WL 2785636, at *2 (S.D. Tex. July 16, 2008) (citing 11 CHARLES A. WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2810.1 at 127—28 (2d ed. 1995) (footnotes omitted)); *see also Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 863—64 (5th Cir. 2003).

Reconsideration is an "extraordinary remedy that should be used sparingly," *Templet*, 367 F.3d at 479, over which a district court has considerable discretion to grant or to deny. *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir.1993). This is so, because "where litigants have once battled for the court's decision, they should neither be required, nor without good reason, permitted, to battle for it again." *Rana v. Spectra Energy Corp.*, 2010 WL 3257523, at *2 (S.D. Tex. Aug. 17, 2010) (citation omitted).

### III. Government's Motion for Reconsideration of the Court's Order Striking the Testimony of Dr. Weis (Dkt. No. 730)

On July 1, 2008, CITGO moved to strike Dr. Weis' testimony, setting forth numerous flaws in his theory of causation. (Dkt. No. 671.) Under the Local Rules of the Southern District of Texas, the Government's response was due no later than July 21, 2008. *See* S.D. TEX. LOCAL RULES 7.3, 7.4 (providing that opposed motions will be submitted to the judge for ruling 20 days from filing, responses must be filed by the submission date, and failure to respond will be taken as a representation of no opposition).[1] However, the submission date passed, and the Government did not respond. After Dr. Weis testified a second time, CITGO filed a supplement to its motion to strike. (Dkt. No. 685.) Almost a month later, on August 15, 2008, CITGO referred to its motion to strike Dr. Weis in its Reply Memorandum in Support of its Motion to Exclude the Testimony of the Alleged Victims, noting that "*[t]he government never responded to this motion. . . .* Standing unopposed, CITGO's motion to exclude Dr. Weis should be granted." (Dkt. No. 693 (emphasis in original).)

On August 21, 2008, the Government submitted a filing entitled "Notice of CITGO's Failure to Comply with Local Rules on Filing, Affirming Opposition to CITGO's Motion to Strike the Testimony of Dr. Weis, and of the Government's Right to File Pleadings on Behalf of Victims," which complained that CITGO did not confer with the Government before filing its motion to strike Dr. Weis. (Dkt. No. 694.) The Government also complained of CITGO's characterization of the motion as "unopposed," but acknowledged that it "ha[d] not filed a written response to CITGO's motion because there [was] nothing in the motion that require[d]

---

1. The local rules have since been amended to extend the submission date to 21 days after a motion is filed.

4

such a response." (Dkt. No. 694 at 3.) Nonetheless, the Government set forth the following response to the arguments raised in CITGO's motion:

> Dr. Weis's testimony meets the standards for the admission of expert testimony as set forth in FED. R. EVID. 702, 703 and 704(a). *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995); *Moore v. Ashland Chemical Inc.*, 151 F.3d 269, 279 (5th Cir. 1998). CITGO was given the opportunity to cross-examine Dr. Weis and was unable to discredit his expert opinion that tanks 116 and 117 were the direct and proximate cause of the adverse health effects suffered by the victim/witnesses. The fact that CITGO does not like the expert's opinion is not sufficient grounds for the Court to exclude it. If the court believes that a pleading raises some real or novel issue of fact or law, it is within the discretion of the court to issue a scheduling order requiring additional briefing.

(*Id.* at 3.)

In a Memorandum Opinion & Order entered March 31, 2011, the Court granted CITGO's motion to strike Dr. Weis. (Dkt. No. 728.) The Government now moves for reconsideration and, for the first time, attempts to address the specific arguments raised in CITGO's motion to strike Dr. Weis.

The Government first complains that the Court's March 31, 2011 Memorandum Opinion & Order incorrectly stated that the Government did not respond to CITGO's motion to strike Dr. Weis. (Dkt. No. 730 at 1 n.1.) To the extent the Court inadvertently overlooked the Government's one-paragraph response to CITGO's motion to strike Dr. Weiss—which was untimely filed among more than 700 documents, many of which were filed under seal—the Court will grant the Government's motion to reconsider so that the record reflects that the Court fully considered the Government's initial response, set forth *supra* in its entirety.

Upon further consideration, the Court finds that, by training and experience, Dr. Weis is qualified as an expert in the field of toxicology. CITGO's objections go more to the weight that Dr. Weis' testimony should be given than to Dr. Weis' qualification as an expert, and

"[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [factfinder's] consideration." *United States v. 14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996) (quoting *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). Thus, the Court finds that Dr. Weis' testimony should not be stricken, but should be considered and weighed accordingly. The Government's motion to reconsider is therefore granted.

### IV. Government's Motion for Reconsideration of the Court's Order Allowing the Testimony of James Montgomery (Dkt. No. 732)

On May 12, 2008, CITGO offered the testimony of James Lester Montgomery, an expert witness in the field of air quality predictive modeling. The Government then moved to strike Mr. Montgomery's testimony regarding emissions from Tanks 116 and 117 from the record on the basis that Mr. Montgomery's "opinion testimony [did] not meet the minimal admissibility requirements of the Federal Rules of Evidence nor *Daubert* and its progeny." (Dkt No. 643 at 11.) According to the Government: (1) Mr. Montgomery's methodology had not been tested or subjected to peer review; (2) Mr. Montgomery did not determine the potential rate of error or follow any standards and controls; and (3) there was no evidence that Mr. Montgomery's methodology had been generally accepted in the scientific community.

In a Memorandum Opinion & Order entered March 30, 2011, the Court denied the Government's motion to strike Mr. Montgomery. (Dkt. No. 727.) In rejecting the Government's arguments, the Court found that Mr. Montgomery used well-accepted methods that met minimum standards of reliability, and to the extent those methods deviated from modeling under ideal circumstances, that deviation affected the weight to be given to Mr. Montgomery's testimony and not its admissibility. (*Id.* at 7.)

The Government now moves for reconsideration, as it "believes that clear and convincing evidence established that information upon which Mr. Montgomery's expert opinion was based was so unreliable and fundamentally unsupported, that the Court abused its discretion in admitting and accepting Mr. Montgomery's testimony." (Dkt. No 732 at 1 (citing *Barrel of Fun, Inc. v. State Farm Fire & Cas. Co.*, 739 F.2d 1028, 1034 (5th Cir. 1984)).) The Government does not present any new arguments or evidence in its motion to reconsider, but merely rehashes the same arguments the Court previously considered and rejected.[2]

As the Court has previously made clear, the Government's re-urged objections concerning Mr. Montgomery's methodology go more to the weight that his testimony should be given than to his qualification as an expert. (Dkt. No. 727 at 7.) *See also* Part III, *supra* (quoting *14.38 Acres of Land, More or Less Sit. in Leflore County, Miss.*, 80 F.3d at 1077). The Court has not changed its opinion that Mr. Montgomery's testimony should not be stricken, but should be considered and weighed accordingly. The Government's motion to reconsider is therefore denied.

**V.   Government's Motion for Reconsideration of the Court's Order Granting CITGO's Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 733)**

On April 5, 2011, the Court entered a Memorandum Opinion & Order granting CITGO's Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 575) on the grounds that the Government failed to present sufficient evidence that the alleged victims' physical symptoms were directly and proximately traceable to emissions from Tanks 116 and 117. (Dkt. 729.) Specifically, the Court found that: (1) none of the medical records

---

2. As CITGO points out, the Government's motion to strike and motion to reconsider both complain that Mr. Montgomery: (1) relied on only one Summa Canister sample from the tanks; (2) assumed the measurement at the rim of the tank was the same as ground level; (3) failed to utilize the Water9 Method; (4) ignored evidence that the emissions from the cocktail of chemicals from Tanks 16 and 17 caused the victim/witnesses' health effects; and (5) failed to consider wind conditions existing at the time of the victim/witnesses' complaints.

7

documenting more than 950 office visits diagnosed chemical exposure; (2) the extensive monitoring data from the Corpus Christi area did not show readings of volatile organic compounds that exceeded state and federal regulatory levels; and (3) in light of the potential causal ambiguities of the alleged victims' symptoms (such as allergies, bacteria, viruses, or chemical exposure), something more than symptoms alone was necessary to prove causation, especially when "working backwards" from symptoms to a cause. Based on the record evidence, the Court concluded that although Tanks 116 and 117 may have caused unpleasant odors, there was no proof showing that the concentration of chemicals in those emissions rose to the level necessary to cause health effects.

The Government now moves for reconsideration "[b]ecause [it] believes the Court overlooked significant direct evidence of the causal connection." (Dkt. No. 733 at 1.)

The Government first complains that "[i]t appears from the context of the Court's order, that the Court was requiring the government to establish that each time one of the victim/witnesses went to the doctor and reported 'common symptoms,' the complaint was based on and diagnosed as exposure to chemical emissions." (Dkt. No. 733 at 2.) According to the Government, "In order to qualify as a 'victim' as that term is used in the CVRA, the victim/witnesses need not have been exposed to chemical emissions that caused health effects *every time they went to a physician*." (*Id.* (emphasis in original).) The Court finds this argument to be without merit. Not only does the Government mischaracterize the Court's April 5, 2011 Memorandum Opinion & Order as requiring a diagnosis of chemical exposure at *every* office visit, the Government appears to ignore the fact that *not one single medical record* documenting more than 950 office visits ever diagnosed chemical exposure in this case.

The Government next complains that the Court did not address the fact that Dorothy Daywood and some witnesses experienced some symptoms around the same time they smelled odors traced to Tanks 16 and 17. According to the Government, the temporal connection between the acute health effects suffered by Ms. Daywood and exposure to the emissions from Tanks 116 and 117 is conclusive proof of causation as to all the alleged victim witnesses. Contrary to the Government's assertion, the Court explicitly acknowledged that "the government ha[d] traced a few odors back to tanks 116 and 117," but found that "the temporal connection between exposure and symptoms is generally not entitled to great weight." (Dkt. No. 729 at 6.) The Court further explained that "[a]lthough tanks 116 and 117 may have caused unpleasant odors, there is no proof showing that the concentration of chemicals in these emissions rose to the level necessary to cause health effects." (*Id.*)

The Government also complains that the Court did not take into account the possibility that "spikes" in emissions might have occurred, but instead overvalued the sampling data offered by CITGO. However, the Court explicitly acknowledged that "the Government ha[d] not provided monitoring data showing spikes" and concluded that the sampling evidence was "entitled to the weight it deserve[d]." (Dkt. No. 729 at 7.)

As a final matter, the Court notes that it has considered the testimony of Dr. Weiss in conjunction with the Government's motion to reconsider, and has given Dr. Weiss' testimony the weight it deserves. However, the Court has not changed its opinion that the Government has failed to present sufficient evidence demonstrating that: (1) the concentration of chemicals in the emissions from Tanks 116 and 117 rose to the level necessary to cause health effects, and (2) the alleged victims' physical symptoms were directly and proximately traceable to

9

emissions from Tanks 116 and 117, as opposed to merely being consistent with exposure. The Government's motion to reconsider is therefore denied.

## VI. Conclusion

Accordingly, it is hereby **ORDERED** as follows:

1. The Government's Motion for Reconsideration of the Court's Order Striking the Testimony of Dr. Weis (Dkt. No. 730) is **GRANTED**;

2. CITGO's Motion to Strike the Specific Causation Testimony of Dr. Weis (Dkt. No. 671) is **DENIED**;

3. The Government's Motion for Reconsideration of the Court's Order Allowing the Testimony of James Montgomery (Dkt. No. 732) is **DENIED**; and

4. The Government's Motion for Reconsideration of the Court's Order Granting CITGO's Motion to Exclude the Government's Purported "Victim" Witnesses (Dkt. No. 733) is **DENIED**.

**SIGNED** this 27th day of July, 2011.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE