UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
|    Plaintiff, § | | |
| § | | |
| v. § | CRIMINAL ACTION NO. C-06-563 | |
| § | | |
| CITGO PETROLEUM CORPORATION, § | | |
| CITGO REFINING AND CHEMICALS § | | |
| COMPANY, L.P., § | | |
|    Defendants. § | | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is the Motion of the United States ("the Government") to Empanel a Sentencing Jury Pursuant to FED. R. CRIM P. 23 and 18 U.S.C. § 3571(d) (Dkt. No. 822), to which Defendants CITGO Petroleum Corporation and CITGO Refining and Chemicals Company, L.P. (collectively "CITGO" or the "CITGO entities") have responded (Dkt. No. 827) and the Government has replied (Dkt. No. 830). The Community Members, as crime victims under the Crime Victims' Rights Act, 18 U.S.C. § 3771, have also filed a brief attempting to join the Government's motion (Dkt. No. 825).

**I. Background**

On June 27, 2007, the CITGO entities were convicted by a jury on two felony counts each of operating an oil water separator without the proper emission control devices, in violation of the Clean Air Act, 42 U.S.C. §§ 7413(c)(1), 7411(e) and 40 C.F.R. § 60.692-4. Following a separate bench trial, the CITGO entities were convicted on July 17, 2007 on three misdemeanor counts each of unlawfully taking and aiding and abetting the taking of migratory birds in violation of the Migratory Bird Treaty Act, 16 U.S.C. § 703(a).

Upon conviction of violating the Clean Air Act, CITGO became subject to two potential statutory sentencing schemes: (1) a maximum fine of $2,000,000 ($500,000 per entity per count) under 18 U.S.C. § 3571(c)(4) or (2) twice the gross, pecuniary gain derived by CITGO from its offenses under the Alternative Fines Act, 18 U.S.C. § 3571(d).

In the Pre-Sentence Investigation Reports prepared for each defendant, the United States Probation Office ("Probation") determined that the gross pecuniary gain to each CITGO entity was $4,900,000, which was based on the cost to install roofs on Tanks 116 and 117 in 1994 ($2,000,000) plus interest from 1994 to 2007 ($2,900,000). CITGO objected to this determination because it ignored the fact that CITGO actually spent $5,700,000 installing roofs on the tanks in 2003, which is more than it would have spent had it installed the roofs in 1994. Thus, CITGO argued, it did not realize any "gross pecuniary gain" from its violations. The Government also objected to Probation's determination, but for other reasons. According to the Government, "gross pecuniary gain" should be calculated based on all of the East Plant Refinery's profits derived while CITGO operated Tanks 116 and 117 without roofs from 1994 to 2003, which the Government calculated to be more than $1,100,000,000.

On September 20, 2011, CITGO filed a Motion to Preclude Sentencing under 18 U.S.C. § 3571(d) (Dkt. No. 741) on the grounds that the Supreme Court's holding in *United States v. Apprendi*, 530 U.S. 466 (2000), applies not only to terms of imprisonment, but also criminal fines. Because the jury did not make a specific, factual finding as to gross pecuniary gain, CITGO argued that the Alternative Fines Act could not be applied at sentencing. In May 2012, the Court decided to delay CITGO's sentencing to have the benefit of the Supreme Court's then-pending ruling in *Southern Union Co. v. United States*, — U.S. —, 132 S.Ct. 2344 (2012). On June 21, 2012, the Supreme Court issued its decision, holding that "the rule of *Apprendi* applies

to criminal fines," which means that "'[o]ther than the fact of a prior conviction, any fact that increases" the amount of a criminal fine "beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.'" *Id.* at 2350 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Following the Supreme Court's decision in *Southern Union*, the Government conceded that the "total maximum statutory fine" the Court may impose upon the CITGO entities "is $2,090,000" ($2,000,000 for violations of the Clean Air Act and $90,000 for violations of the Migratory Bird Treaty Act) and "recommend[ed] that the Court impose a fine of $2,090,000." (Dkt. No. 804 at 2.) The Government further recommended that the Court order CITGO to pay $44,000,000 in "community service obligations" to a number of local charities as a condition of probation pursuant to 18 U.S.C. §§ 3563(b)(12),(22). In response, CITGO filed a Motion to Bar the Government from Seeking a Monetary Penalty in Excess of the Statutory Maximum (Dkt. No. 820). In its September 18, 2012 Memorandum Opinion & Order granting CITGO's motion, the Court cited the Government's concession that the total maximum statutory fine is $2,090,000 and concluded as follows:

> The maximum statutory fine for the crimes of which CITGO was convicted is $2,090,000. Accordingly, any monetary penalty in excess of that amount—regardless of whether it is categorized as "community service," "community restitution," or "monitoring expenses," or whether the payment is made to a charity instead of the United States Treasury—is impermissible.

(Dkt. No. 823 at 1, 8.)

## II. The Government's Motion to Empanel a Sentencing Jury

In light of the Supreme Court's decision in *Southern Union* that *Apprendi* applies to criminal fines and this Court's ruling that any monetary penalty in excess of the maximum fine under 18 U.S.C. § 3571(c)(4) is impermissible on the current record, the Government now moves

the Court to convene a sentencing jury in order to determine the facts necessary to support a fine based upon CITGO's gross, pecuniary gain pursuant to the Alternative Fines Act, 18 U.S.C. § 3571(d).

As stated *supra*, the Government claims that CITGO realized a gross pecuniary gain in excess of $1,100,000,000 from operating Tanks 116 and 117 in violation of the Clean Air Act, which represents the CITGO East Plant Refinery's total profits from January 1994 to May 2003. To establish this measure of pecuniary gain, the Government would ask the sentencing jury to answer three questions, beyond a reasonable doubt, along the lines of the following:

> (1) During the time frame alleged in the indictment did wastewater generated by all the process units at the CITGO Corpus Christi, Texas, refinery have to pass through tanks 116 and 117?;
>
> (2) During the time frame alleged in the indictment could CITGO have lawfully operated any of its process units without the use of either tank 116 or 117 or both?;
>
> (3) If the answers to questions one and two are yes, then what was the amount of pecuniary gain recognized by the CITGO East Plant refinery during the time frame alleged in the Indictment?

(Dkt. No. 822 at 1.) According to the Government, the evidence necessary to answer Questions One and Two can be "easily presented" based on engineering analysis evidence that already exists and is in the possession of CITGO and the Government. The evidence necessary to answer Question Three is also "easily presented" because it is based on operating profits during the decade CITGO operated Tanks 116 and 117 in violation of the Clean Air Act.

### III. Legal Standard

Under 18 U.S.C. § 3571(c), an organizational defendant that has been found guilty of a criminal offense for which no fine amount is specified by separate statute may be sentenced to a

maximum statutory fine of $500,000. Under the Alternative Fines Act, however, a higher fine may result:

> If any person derives pecuniary gain from the offense, or if the offense results in pecuniary loss to a person other than the defendant, the defendant may not be fined more than the greater of twice the gross gain or twice the gross loss, unless imposition of a fine under this subsection would unduly complicate or prolong the sentencing process.

18 U.S.C. § 3571(d).

Thus, under § 3571, $500,000 is the statutory maximum fine against an organization that has been found guilty of a felony, but an alternative fine applies if the defendant has derived pecuniary gain from the offense, or if the offense has resulted in pecuniary loss to another person. However, if imposing an alternative fine would "unduly complicate or prolong the sentencing process," the $500,000 maximum applies. 18 U.S.C. § 3571(d).

In *United States v. Sanford*, the District Court for the District of Columbia "consider[ed] the interaction between the constitutional issues stemming from the Supreme Court's recent decision in *Southern Union* . . . and the appropriate definitions of 'gross gain' and 'derived . . . from' under the Alternative Fines Act, 18 U.S.C. § 3571(d)," as applied to evidence of monetary proceeds offered in a criminal environmental pollution trial. *United States v. Sanford, Ltd.*, — F. Supp. 2d —, 2012 WL 2930770, *1 (D.C.C. Jul. 19, 2012). In that case, the indictment alleged that, between March 2007 and July 2011, the defendants conspired to fail to maintain an accurate Oil Record Book (ORB) as required by law, failed to maintain the ORB, and knowingly discharged machinery-space bilge waste overboard their fishing vessel without first running such waste through an Oily Water Separator (OWS), in violation of the Act to Prevent Pollution from Ships (APPS). *Id.* at *1. Much like the Government in this case, the Government in *Sanford* sought a fine under § 3571(d) based on an allegation in the indictment that defendants "gained,

5

during the time period relevant in this indictment, revenues of $24,862,954.89 for the offload of fish cargo from the [vessel]." *Id.* at *2. The defendants moved to exclude evidence of their monetary proceeds at trial, claiming that revenues from the fish cargoes did not constitute "proceeds" of their alleged offenses. *Id.*

In considering what evidence the Government would be allowed to present at trial, the *Sanford* court noted that, among those courts that have interpreted the proper meaning of "gross gain" under § 3571(d), "there is a difference of opinion as to whether it includes only 'net' gains, *i.e.*, profits, whether it includes all revenues derived from an offense without deducting costs and taxes . . . ." *Id.* at *9 (citing *United States v. McNair*, 605 F.3d 1152, 1217, 1224 (11th Cir. 2010); *United States v. Wilder*, 15 F.3d 1292, 1301 (5th Cir. 1994); *United States v. Bader*, 2010 WL 2681707, *2 (D. Colo. Jul. 1, 2010); *United States v. Foote*, 2003 WL 22466158, at *7 (D. Kan. Jul. 31, 2003); *SEC v. Bilzerian*, 814 F. Supp. 116, 120 (D.D.C. 1993)). Citing Judge Lee H. Rosenthal's opinion in *United States v. BP Products North America, Inc.*, 610 F. Supp. 2d 655, 660 (S.D. Tex. 2009), the court also recognized that at least one court has "approved of a definition of 'gross gain' that was neither gross revenue nor gross profit." *Sanford*, 2012 WL 2930770 at *10.

In *BP Products*, Judge Rosenthal was asked to accept a plea agreement between the Government and the defendant arising from a Clean Air Act violation that caused an oil refinery explosion, killing 15 and injuring at least 170 workers. *BP Products*, 610 F. Supp. 2d at 660. Much like the Government in the present case, the *BP Products* victims argued that "gross gain" should be measured by all of the plant's profits for a time period before the explosion, which was between $450,000,000 and $1,000,000,000. *Id.* at 699. Contrary to the Government's position in this case, however, the Government argued in *BP Products* that profits were the wrong measure

6

of gross gain, and that the fine should instead be $50,000,000, or twice the amount of the defendant's cost savings from not replacing a faulty "blowdown stack" that "had been in poor operating condition since at least April 2003" and was believed to be the cause of the explosion. *Id.* at 665, 695–96. The Government also "strenuously argue[d]" that the court accept the plea agreement because "were this case to go to trial, the court would conclude that calculating the pecuniary gain derived from the offense or pecuniary loss resulting from the offense would unduly complicate and prolong the sentencing process." *Id.* at 689.

Judge Rosenthal ultimately agreed, noting that the House Report from the Alternative Fines Act's predecessor statute, 18 U.S.C. § 3623(c), discussed the circumstances in which calculating an alternative fine might be inappropriate:

> For example, if determining the amount of the defendant's gain were to require a protracted hearing that would last longer than the trial, the judge could decline to base the fine on the defendant's gain. The court's determination as to whether imposing a fine based on defendant's gain or victim's loss is discretionary, and the committee is confident that federal judges will not abuse this discretion.

*Id.* at 690 (quoting H.R. REP. NO. 98–906 at 17) (1984)). Judge Rosenthal also recognized that cases decided under the Alternative Fines Act show that courts are more likely to conclude that determining the amount of a fine would unduly complicate or prolong the sentencing proceeding when causation issues are disputed or disputed amounts of gains or losses are involved. *Id.* at 695.

Like the court in *Sanford*, this Court finds that "the *BP Products* case is instructive, not only regarding the appropriate interpretation of § 3571(d), but also regarding the myriad practical complexities that can arise in proving a 'gross gain' to an organizational defendant in an environmental crime case." *Sanford*, 2012 WL 2930770 at *12.

**III. Analysis**

Before empanelling a sentencing jury, the Court would first have to determine the appropriate measure of "gross gain" under the Alternative Fine Acts. The Government assumes that its calculation of "gross gain" based on total profits at the East Plant Refinery for a ten-year period is the correct one. However, as stated *supra*, Probation recommends that the Court calculate "gross gain" based on the amount of money CITGO saved from not installing the roofs in 1994 plus interest, and CITGO claims that because the actual cost it incurred when it installed roofs on Tanks 116 and 117 in 2003 was more than it would have spent installing the roofs in 1994, it experienced no pecuniary gain from its offenses.

After deciding the correct standard of gross pecuniary gain to apply in this case, the Court must next empanel a sentencing jury. Despite the Government's claim to the contrary, the Court is not convinced that this process should require less than a day. First, the Government appears to forget that, several months before the initial trial began, the Parties were ordered to confer and prepare a Jury Questionnaire to be used to pre-screen potential jurors. When they could not reach an agreement, the Court held a conference to resolve the issues in dispute. The Parties thereafter filed two agreed Proposed Jury Questionnaires containing nearly 50 questions (Dkt. Nos. 217, 222). Each side also filed separate Proposed Voir Dire (Dkt. Nos. 305, 310, 312.) Based on the extensive coverage this case has received in the press since CITGO's conviction, the Court anticipates that selecting an unbiased jury will be even more complicated and time-consuming than it was five years ago. For example, in the last two months, this case has received coverage in the local newspaper on an almost weekly basis, usually on the front page. *See, e.g.*, Mike D. Smith, *Feds Continue Collecting Victim Impact Statements in Citgo Sentencing*, CORPUS CHRISTI CALLER TIMES, Oct. 27, 2012; Mike D. Smith, *Feds Begin Collecting Additional Victim Impact*

*Statements in Citgo Sentencing*, CORPUS CHRISTI CALLER TIMES, Oct. 25, 2012; Mike D. Smith, *Citgo Victims Asked to Step Forward*, CORPUS CHRISTI CALLER TIMES, Oct. 23, 2012; Mike D. Smith, *Federal Prosecutors Issue Community Notice for Additional Victim Impact Statements in Citgo Sentencing*, CORPUS CHRISTI CALLER TIMES, Oct. 4, 2012; Mike D. Smith, *Judge Sets Fine Limit in Citgo Case; Time Given for Potential Victims to Come Forward*, CORPUS CHRISTI CALLER TIMES, Sept. 21, 2012; Mike D. Smith, *Federal Prosecutors Seek Jury in Citgo Sentencing for Felony Clean Air Act Offenses*, CORPUS CHRISTI CALLER TIMES, Sept. 19, 2012; Mike D. Smith, *Refinery Neighbors Can be Considered Victims in Citgo Sentencing, Federal Judge Rules*, CORPUS CHRISTI CALLER TIMES, Sept. 14, 2012; Mike D. Smith, *Sentencing for Citgo Migratory Bird Treaty Act, Clean Air Act Violations Postponed*, CORPUS CHRISTI CALLER TIMES, Sept. 10, 2012; Michelle Villarreal, *Utah Law Professor Files Petition Tuesday to Allow 14 Corpus Christi Residents to Testify in Citgo Sentencing*, CORPUS CHRISTI CALLER TIMES, Sept. 4, 2012. This case has also received extensive coverage on local TV news stations in recent months, and videos of these news segments are currently available online. *See* www.kristv.com/videos/epa-looking-for-residents-affected-by-citgo-leak/; www.kztc10.com/videos/judge-to-decide-citgo-punishment-for-violations-kztv/; www.kztv10.com/news/epa-justice-department-holding-community-meetings-concerning-citgo-case/; www.kristv.com/news/citgo-sentencing-underway-5-years-after-guilty-verdict/; www.kristv.com/news/epa-looking-for-potential-victims-in-citgo-case/; www.kristv.com/news/epa-calls-for-citgo-victims-to-come-forward/.

    The Court is similarly not persuaded by the Government's claim that the evidence necessary to determine gross gain will be "easily presented" to a sentencing jury. Before and during the initial 27-day trial in this case, the Parties filed 27 motions in limine objecting to

9

various evidence and witnesses (Dkt. Nos. 92, 120, 234-49, 252, 253, 255, 267, 284, 286, 298, 301, 380), and the Court heard oral argument and/or held hearings on a number of the motions. The Government states that it intends to call eight to ten witnesses during the sentencing hearing, and the Court anticipates that CITGO would call an equal number of rebuttal witnesses. The Parties also offered a total of 313 sentencing hearing exhibits during the September 10, 2012 presentencing hearing, which the Court admitted into evidence. (Dkt. Nos. 815, 816.) Although the Parties did not object to the opposing sides' evidence at that time, the Court anticipates another flurry of motions in limine if the same or similar evidence were to be presented to a sentencing jury instead of the undersigned sentencing judge.

Finally, the sentencing jury would be required to make complex determinations involving refinery processes and pecuniary gain without the benefit of being present at the initial trial, perhaps requiring significant evidence to be presented again. The Court acknowledges that the Government has cited a handful of federal cases that support empanelling a sentencing jury to correct *Apprendi* issues. *See United States v. Montiel-Sanchez*, 171 Fed. App'x 599, 600 (9th Cir. 2006); *United States v. Ameline*, 376 F.3d 967, 983-84 (9th Cir. 2004), *superceded by United States v. Ameline*, 409 F.3d 1073 (9th Cir. 2005) (*en banc*) (addressing intervening decision in *Booker*); *United States v. Booker*, 375 F.3d 508, 514 (7th Cir. 2004), *aff'd*, 543 U.S. 220 (2005); *United Sates v. Henry*, 282 F.3d 242, 253 (3d Cir. 2002); *United States v. Cooney*, 26 Fed. App'x 513, 529 (6th Cir. 2002). However, every one of these cases involved remanding for a jury determination of simple issues, usually drug quantity. *Montiel-Sanchez*, 171 Fed. App'x at 600 (drug quantity); *Ameline*, 376 F.3d at 983 (drug quantity and firearm issues); *Booker*, 375 F.3d at 514 (drug quantity and facts underlying obstruction of justice determination); *Henry*, 282 F.3d at 253 (drug identity and quantity); *Cooney*, 26 Fed. App'x at 529 (drug quantity). As Justice

Breyer recognized in his dissenting opinion in *Southern Union*, "determin[ing] fine-related sentencing facts . . . will often involve highly complex determinations," and in "an environmental pollution case, the jury may have particular difficulty assessing different estimates of resulting losses." *Southern Union*, 132 S.Ct. at 2370 (Breyer, J., dissenting).

For the foregoing reasons, the Court finds that empanelling a sentencing jury in order to determine CITGO's gross pecuniary gain would unduly complicate or prolong the sentencing process. As such, the Court need not consider CITGO's argument that the Government's request for a sentencing jury ignores the fact that there are no allegations of pecuniary gain in the Superseding Indictment, violates double jeopardy and CITGO's right to a jury trial under the Sixth Amendment, is barred by the statute of limitations, and has been forfeited by the Government's previous conduct and concessions.

## IV. Conclusion

The Government's Motion to Empanel a Sentencing Jury Pursuant to FED. R. CRIM P. 23 and 18 U.S.C. § 3571(d) (Dkt. No. 822) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 6th day of November, 2012.

                                                JOHN D. RAINEY
                                           SENIOR U.S. DISTRICT JUDGE